IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FARM CREDIT SERVICES OF AMERICA, FLCA,<br><br>           Plaintiff,<br><br>      vs.<br><br>MARK OPP,<br><br>           Defendant. | **8:12CV382**<br><br>**MEMORANDUM AND ORDER** |

Mark Opp, the defendant, has moved to transfer this case to the United States District Court for the District of South Dakota, Northern Division. (Filing No. 13). Opp argues that the "convenience of the parties and witnesses, and the interest of justice requires a transfer of the case," and litigation in Nebraska "would effectively deprive the Defendant of his fair day in court." Id. For the reasons discussed below, the motion to transfer will be denied.

STATEMENT OF FACTS

The plaintiff's lawsuit seeks to enjoin the defendant from allegedly violating a business nonsolicitation agreement, and requests recovery of plaintiff's damages for past violations of that agreement. The plaintiff is part of the federal Farm Credit System, and provides "crop insurance" plans under the authority of the Federal Crop Insurance Act, 7 U.S.C. §1508 et seq. to farmers and ranchers throughout Iowa, Nebraska, South Dakota and Wyoming. (Filing No. 1, ¶ 5 at CM/ECF p. 2). There are approximately 16 insurance companies that provide crop insurance for farmers in these states; Farm Credit is a broker for five of those companies. It does not itself provide insurance coverage.

In November of 2008, Mark Opp was offered the position of Insurance Specialist for Farm Credit. (Filing No. 15-1, ¶ 3 at CM/ECF p. 1). His resume submitted in support

of the application stated he obtained an Associate of Arts degree from Northern State University in 1981, and began working in the crop insurance industry in 1982. (Filing No. 26-2 at CM/ECF p. 4). At the time of the application, Opp was the Claims Supervisor for Great American Crop Insurance in the Northern part of South Dakota and the Southern part of North Dakota. (Filing No. 26-2 at CM/ECF p. 3). As a Claims Supervisor, he reviewed and assigned claims to adjusting staff, directed the development of claims files and interpreted policy terminology. Id.

Farm Credit offered Opp the position of Insurance Specialist to operate the plaintiff's office in Mobridge, South Dakota and report to its office in Aberdeen, South Dakota. (Filing No. 15-1, ¶¶ 3 & 5 at CM/ECF 1-2). As a condition of obtaining employment with Farm Credit, Opp was required to agree to the terms of a "Assignment, Nonsolicitation and Nondisclosure Agreement." (the "Nonsolicitation Agreement"). The agreement stated:

> NONSOLICITATION OF CUSTOMERS. For a period of one year following the termination (voluntary or involuntary, for any or no reason) of Employee's employment with FCSAmerica, Employee shall not, directly or indirectly, sell, solicit, support, direct, manage or otherwise have any involvement whatsoever in the sale, marketing, or solicitation of any customer of FCSAmerica with whom Employee actually did business and had personal contact while employed by FCSAmerica, except to the extent such activities are unrelated to and not competitive with the business, products or services that Employee offered or provided on behalf of FCSAmerica and cannot adversely affect FCSAmerica's relationship or volume of business with such customers.

(Filing No. 1-1 at CM/ECF p. 1).

The agreement also included a choice of law and venue provision which stated:

> It is understood and agreed that the construction and interpretation of this Agreement shall at all times and in all respects be governed by the internal laws of the State of Nebraska, without giving effect to the conflict of laws provisions thereof. Venue of any action brought to enforce or relating to this Agreement shall be brought exclusively in the District Court of Douglas County, Nebraska, or the United States District Court for the District of Nebraska.

Id.

The defendant signed the Nonsolicitation Agreement, and began working for the plaintiff. He worked at the Mobridge, South Dakota office; was supervised by residents of South Dakota, reported to Farm Credit financial officers Kipp Kettering, Jim Freudenthal, Chuck Nietert, Rebecca Vogel, Josh Rife, and Paul Larson, all of whom reside in South Dakota; and his past and present customers are residents of South Dakota. (Filing No. 15-1, ¶¶ 5 & 8 at CM/ECF p. 1-2).

Opp was terminated for alleged insufficient productivity in May of 2012. (Filing No. 15-1, ¶¶ 16-18 at CM/ECF p. 3). Opp intends to counterclaim for improper termination, perhaps on a common law fraud theory. South Dakota and Nebraska are both employment-at-will states.

Farm Credit alleges that after Opp was terminated, he solicited business from or provided competing business to customers of Farm Credit in violation of the Nonsolicitation Agreement. Filing No. 1, ¶ 18 at CM/ECF p. 6. Farm Credit seeks to enjoin this conduct and to recover lost profits related to Opp's alleged improper act of providing insurance brokerage services to Farm Credit's customers. The customers allegedly lost due to Opp's violation of the Nonsolicitation Agreement reside in South Dakota.

Farm Credit anticipates proving its case with documents and witnesses located in Omaha, Nebraska; specifically, crop insurance documents maintained in electronic format on Omaha computer servers, and Information Technology, Insurance Processing Team, Insurance Operations, and Human Resources employees located in Omaha, Nebraska.

## LEGAL ANALYIS

The complaint filed by the plaintiff, a Nebraska corporation, alleges a breach of contract action against the defendant, a citizen of South Dakota. Provided plaintiff's action could have been brought, in the first instance, in the United States District Court for the District of South Dakota, this court has discretion to transfer the case to that forum for the convenience of the parties and witnesses. See 28 U.S.C. § 1404(a). The court specifically finds that based on the evidence of record, this case could have been filed in a South Dakota forum. The plaintiff has not argued to the contrary.

Although the Nonsolicitation Agreement at issue contains a forum selection clause, this clause is not binding on the federal court. Rather, "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision [concerning] whether to give effect to the parties' forum selection clause and transfer this case. . . ." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988). "The forum selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . ., but rather the consideration for which Congress provided in § 1404(a)." Id. at 31. "Section 1404(a) itself controls [a] request to give effect to the parties' contractual choice of venue and transfer this case to a [different] court." Id. at 29.

Under § 1404, the court performs an individualized analysis of case specific factors to determine whether the defendant's requested transfer to the South Dakota

4

federal court will advance the convenience and fairness of these proceedings. Stewart, 487 U.S. at 29. The court must consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues. Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 696 (8th Cir. 1997) (citing 28 U.S.C. § 1404(a)). Factors to consider include the willingness of witnesses to appear, the ability to subpoena witnesses, the adequacy of deposition testimony, the accessibility to records and documents, the location where the conduct complained of occurred, and the applicability of each forum state's substantive law. Id. (citing Terra Intern., Inc. v. Mississippi Chemical Corp., 922 F. Supp. 1334, 1359 (N.D. Iowa 1996)). Along with the forum selection clause of the parties' contract, the court should also consider such factors as judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law. Id. (citing Terra Intern., 922 F. Supp. at 1361-63).

The plaintiff and its witnesses are from Nebraska; the defendant is from South Dakota and states the customers at issue are necessary witnesses and are also from South Dakota. The question is whether the South Dakota customers have any information which may be relevant to the issues raised by the plaintiff's complaint. The defendant claims these customers approached Opp to purchase insurance, not the other way around, and therefore Opp did not solicit Farm Credit's business. Opp claims he needs the customer witnesses to testify in order to establish his defense to the plaintiff's complaint.

The Nonsolicitation Agreement at issue prohibits not only Opp's active solicitation of Farm Credit's customers, but also providing any sales or support to Farm Credit customers. The plaintiff argues it is therefore irrelevant who initiated the contact between Opp and the customers, and therefore any testimony the customers can provide

is immaterial. Opp argues a clause which prohibits customers from working with their choice of brokers is overbroad and should be stricken on public policy grounds -- and that the South Dakota customer witnesses provide a source of information on the public policy matters at issue.

Under Nebraska law, in reviewing a covenant not to compete for enforceability the court will consider "whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee." Aon Consulting, Inc. v. Midlands Financial Benefits, Inc., 275 Neb. 642, 653, 748 N.W.2d 626, 638 (2008). Stated another way, any covenant not to compete must be reasonable in scope and time so as only to deter "unfair competition" and not prohibit the former employee from engaging in "ordinary competition." Id.

When assessing the scope of a non-compete agreement designed to prevent a former employee from misappropriating customer goodwill, the court will generally allow only those agreements that "restrict[] the former employee from working for or soliciting the former employer's clients with whom the former employee actually did business and [had] personal contact." Polly v. Ray D. Hilderman & Co., 225 Neb. 662, 668, 407 N.W.2d 751, 756 (1987); see also Professional Business Services, Co. v. Rosno, 256 Neb. 217, 223, 589 N.W.2d 826, 831 (1999)(same). Thus, where a noncompete agreement seeks to prevent an employee from doing business with his former employer's clients and customers with whom the employee actually worked, the noncompete agreement will not be deemed overly broad on those grounds. Id.

It therefore appears the Nebraska Supreme Court has already outlined the public policy parameters and limitations on covenants not to compete. Cases challenging such clauses are typically resolved by summary judgment, and if there is a trial, customer

witnesses are not called to testify. Therefore, while the defendant may want to call South Dakota customer witnesses at any trial of this case, the information they may possess does not appear to be relevant to the liability inquiry currently before this court.

As to the issue of damages, the amounts reflected in policies Opp sold to former Farm Credit customers will likely control the damage assessment. South Dakota witnesses will add little, if any, material information to the damage analysis.

Finally, Opp may choose to counterclaim for improper termination of his employment, and may want to call South Dakota witnesses in support of such a case. But in light of the at-will employment laws of both Nebraska and South Dakota, the merits of such a case are highly suspect. Moreover, any wrongful termination counterclaim would raise issues of whether the defendant's employment conduct (or lack thereof) justified his termination, while the issue in this case is whether defendant's post-employment conduct breached the Nonsolicitation Agreement. Thus, any wrongful termination case Opp may pursue would not arise from "essential facts . . . so logically connected [to the Nonsolicitation Agreement case] that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Blue Dane Simmental Corp. v. American Simmental Ass'n., 952 F.Supp. 1399, 1410 (D. Neb. 1997) (quoting Harris v. Steinem, 571 F.2d 119, 123 (2d Cir. 1978)). See Kopf v. Chloride Power Electronics, Inc., 882 F.Supp. 1183, 1188 (D.N.H. 1995)(overruled on other grounds)(holding actions occurring prior to an employee's termination are not sufficiently related to an employer's claim of a breach of a noncompete agreement to make an employee's counterclaim based on age discrimination a compulsory counterclaim). Simply stated, if Opp chooses to pursue a wrongful termination case, he may file it as a separate action in South Dakota. He is not required to file it as a counterclaim to the Nebraska litigation.

Although Opp claims the forum selection clause should not be considered because he did not read, or had no choice but to accept, the forum selection clause, the evidence indicates Opp was educated and experienced in the crop insurance business, was employed when he applied for the position with Farm Credit, and accepted that position along with the terms of the Nonsolicitation Agreement.  Thus both parties were actually, or at least constructively, aware of the forum selection clause.  That clause states Nebraska is the choice of forum and the choice of law governing the application of the clause.  The majority of the witnesses who may have material information related to enforcement of the Nonsolicitation Agreement are in Nebraska.  A Nebraska federal court would be called on to interpret its forum state's law.  Both parties are represented by Nebraska counsel, and Nebraska is the plaintiff's chosen forum.

Based on the totality of the information presented, the court concludes that on balance, Nebraska is a proper forum for litigation of this case and transferring the case to South Dakota will not further the interests of convenience, justice, efficiency, and fairness.

Accordingly,

IT IS ORDERED that the defendant's motion to transfer this case to the United States District Court for the District of South Dakota, Northern Division, (Filing No. 13), is denied.

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.